C. Edward Cather, ISB #6297
Braxton J. Ard, ISB #12941
PARSONS BEHLE & LATIMER
350 Memorial Drive, Suite 300
Idaho Falls, Idaho 83402
Telephone: 208.522.6700
Facsimile: 208.522.5111
ECather@parsonsbehle.com
BArd@parsonsbehle.com

Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT COURT OF IDAHO**

| | |
|---|---|
| MICHAEL WORLTON and WILL RICKS,<br><br>Plaintiffs,<br><br>vs.<br><br>EPHRAIM OLSCHEWSKI and DTLAP Capital, LLC, a Utah limited liability company,<br><br>Defendant | Case No. 4:26-cv-644<br><br>**COMPLAINT** |

Plaintiffs Michael Worlton and Will Ricks (collectively, "Plaintiffs"), by and through their attorneys, Parsons Behle & Latimer, submit this Complaint against Defendant Ephraim Olschewski ("Defendant"), and allege as follows:

**PARTIES**

1. Plaintiff Michael Worlton is an individual who resides at 1271 N 900 E, Shelley, Idaho, and is a citizen of Idaho.

2. Plaintiff Will Ricks is an individual who resides at 64 Ricks Road, Monteview, Idaho, and is a citizen of Idaho.

3. On information and belief, Defendant Ephraim Olschewski is an individual who resides at 6684 Lemon Leaf Drive, Carlsbad, California, and is a citizen of California.

4. DTLAP Capital, LLC ("DTLAP") is a Utah limited liability company, with Olschewski as a member and manager.

## JURISDICTION AND VENUE

5. This Court has subject-matter jurisdiction over Plaintiffs' federal securities claims pursuant to 28 U.S.C. § 1331 and Section 27 of the Securities Exchange Act of 1934, 15 U.S.C. § 78aa, in that those claims arise under Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b) and Rule 10b-5.

6. This Court has supplemental jurisdiction over Plaintiffs' state statutory and common-law claims pursuant to 28 U.S.C. § 1367, because those claims are so related to the federal claims that they form part of the same case or controversy.

7. This Court also has jurisdiction pursuant to 28 U.S.C. § 1332(a), in that this is a civil action between citizens of different States and the amount in controversy exceeds $75,000, exclusive of interest and costs.

8. Venue is proper in this District under 28 U.S.C. § 1391(b)(2), in that a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District, including Defendants' in-person solicitation and sale of the investment to Plaintiffs in Idaho and Plaintiffs' resulting investment of funds from Idaho.

9. This Court has personal jurisdiction over Defendants because, among other things, Defendants purposefully directed their conduct at Idaho by traveling to Idaho to solicit and sell the investment to Plaintiffs, transacted business in Idaho, and committed tortious acts within Idaho and acts outside Idaho causing injury within Idaho.

## GENERAL ALLEGATIONS

10. Defendants marketed to Plaintiffs an investment they called the "Carbon Credit Opportunity," described as an exclusive, revenue-sharing subscription program offered by DTLAP in collaboration with GMEX Group, Zero13, and SecDex Exchange (the "Investment"). Certain marketing materials provided to Plaintiffs are attached hereto as Exhibit A.

11. Defendants represented that the Investment was one typically reserved for institutional investors, to which DTLAP had secured privileged access, and that DTLAP would aggregate individual investments in $1 million blocks so that individual investors could participate for the first time.

12. Olschewski, acting through DTLAP, promoted the Investment, made the representations described below, executed the Carbon Offering Agreement, and directed where Plaintiffs' funds were to be sent.

13. In connection with Olschewski's promotion of the Investment, Olschewski traveled to Idaho and presented or facilitated a presentation regarding the Investment. Plaintiffs were at this presentation and decided to invest in the Investment based on the representation Defendants made while in Idaho.

14. One such representation was that the Investment would provide returns of up to 1% per international banking day, or approximately 20% per month.

15. In addition to being promised these returns at the Idaho presentation, Olschewski made other oral representations to Plaintiffs that the Investment would bring these returns.

16. At various times between the end of July 2025 and the beginning of August 2025, each of the Plaintiffs entered into the written Carbon Offering Agreement (the "Agreement"), which was the formal agreement to participate in the Investment. A true and correct copy of the Agreement signed by Michael Whorlton is attached hereto as Exhibit B.

17. The Agreement also stated that "[t]he program targets returns of up to 1% per international banking day."

18. To corroborate the promised returns, Defendants provided a declaration from Edwards Capital LLC representing that the Investment's historical performance "has met or exceeded up to One percent (1%) per international banking day with profits realized and remitted on calendar month cycles."

19. Defendants also provided Plaintiffs with illustrative schedules depicting principal growing millions of dollars within one to two years at the represented rate. *See* Ex. A.

20. Upon information and belief, the SecDex platform, the trading desk the Investment funds would be invested through, required an aggregate investment of $10 million.

21. Upon information and belief, Defendants solicited and pooled funds from multiple investors, including Plaintiffs, in an attempt to meet that threshold.

22. To that end, Defendants represented to Plaintiffs that DTLAP was aggregating investments in $1 million blocks to allow individual investors to have access to the Investment.

23. The Agreement itself provided that DTLAP would "hold Investor's funds in escrow until a $1 million block is aggregated," after which the funds would be transferred to a sub-account and an online account established with SecDex.

24. It was based on all the representations made by Defendants, orally, through the solicitation material provided to Plaintiffs, and within the Agreement, that Plaintiffs entered the Agreement.

25. In connection with the Agreement, and in further reliance upon Defendants representations, Worlton invested $225,000 and Ricks invested $250,000.

26. Plaintiffs' funds were supposed to be transferred to SecDex once DTLAP received the funds.

27. Upon information and belief, DTLAP failed to timely transfer Plaintiffs' funds to SecDex, and whether Plaintiffs' funds were ever transferred to SecDex and the current disposition of Plaintiffs' funds are unknown.

28. In the months following their investments, Defendants provided Plaintiffs with access to an online portal that purported to show Plaintiffs' Investment, which showed 1% daily growth.

29. By December 2025, however, Plaintiffs could no longer see the status of their Investment.

30. When Plaintiffs raised concerns about their accounts, Defendants responded with excuses and assured Plaintiffs that the Investment was safe and still performing well.

31. On information and belief, the online portal Defendants claimed as showing Plaintiffs' investment did not actually show Plaintiffs' funds, Investment, or returns, and was a sham meant to make Plaintiffs believe that their Investment was performing successfully.

32. Plaintiffs decided to terminate the arrangement and withdraw all funds, including principal and interest.

33. The Agreement allowed for the Plaintiffs to "elect to withdraw monthly interest or repurchase and compound revshare earnings every 30 days, subject to the terms of entity," but Defendants never returned Plaintiffs' funds.

34. Plaintiffs continued to push Defendants to return Plaintiffs' funds, but Olschewski always provided excuses as to why he could not get Plaintiffs their funds, claiming emergencies, technical issues, or other reasons why he needed more time to return Plaintiffs' funds.

35. Upon information and belief, Plaintiffs' funds Defendants received were not invested as represented but were instead retained by Defendants or diverted to serve Defendants' purposes.

36. After months of trying to get Defendants to return their funds, Plaintiffs sought the assistance of legal counsel.

37. On June 15, 2026, Plaintiffs, through counsel, demanded from Defendants a full accounting and payment of principal and interest by June 30, 2026. A true and correct copy of the June 15, 2026, demand letter is attached hereto as Exhibit C.

38. Based on the represented rate of return, the demand identified amounts owed as of June 15, 2026, of approximately $1,949,486.60 to Worlton and $2,166,096.22 to Ricks, subject to a full accounting.

39. In response Olschewski worked with Plaintiffs' counsel to settle this dispute. The parties reached a tentative agreement where Olschewski would pay certain amounts and Plaintiffs would waive any claims they had against Defendants.

40. However, when it came time to formalizing an agreement and making the agreed payments, Olschewski responded with excuses as to why he needed more time and then just ceased communicating with Plaintiffs.

41. The Investment Defendants offered and sold to Plaintiffs was a security, in that it was an investment contract and an interest in a pooled, revenue-sharing enterprise in which Plaintiffs invested money with the expectation of profits to be derived from the efforts of Defendants and others.

42. Upon information and belief, neither Defendant was registered as a broker-dealer, agent, investment adviser, or investment adviser representative under the Idaho Uniform Securities Act or federal securities laws, and no exemption from registration applied.

43. Through BrokerCheck by FINRA, searches for "Ephraim Olschewski," "DTLAP Capital, LLC," "DTLAP Capital," and "DTTLAP" return zero results. A search of "Olschewski" returns three pages of various broker dealers with last names the same or similar to "Olschewski" but none of the listed individuals are "Ephraim Olschewski."

**COUNT I**

*Violation of Section 10(b) of the Securities Exchange Act and SEC Rule 10b-5*

44. Plaintiffs incorporate by reference each of the allegations set forth above as though fully set forth herein.

45. The Investment Defendants offered and sold to Plaintiffs is a security as defined by 15 U.S.C. § 78c(a)(10) and *SEC v. W.J. Howey Co.*, 328 U.S. 293 (1946) (defining an investment contract).

46. In connection with the offer, purchase, and sale of the Investment, and by use of the means and instrumentalities of interstate commerce, Defendants, directly and indirectly made untrue statements of material fact and omitted to state material facts necessary to make their statements not misleading; and engaged in acts, practices, and courses of business that operated as a fraud and deceit upon Plaintiffs, in violation of Section 10(b) of the Securities Exchange Act of 1934 (15 U.S.C. § 78j(b)), and Rule 10b-5 (17 C.F.R. § 240.10b-5). These misrepresentations include the returns Defendants promised Plaintiffs, that Defendants would pool Plaintiffs funds with other investors and place those funds with SecDex where they would be traded and earn returns through carbon credits, and representations that Plaintiffs funds were actually earning the interest promised by Defendants.

47. Defendants' misrepresentations and omissions were material, and Defendants made them knowingly or with reckless disregard for their truth.

48. Plaintiffs justifiably relied on Defendants' misrepresentations and omissions in purchasing the securities and suffered damages as a direct and proximate result.

49. As a direct result of Defendants' misrepresentations and omissions, Plaintiffs have been denied the returns promised to them, including returns actually shown, and the use and benefit of their principal.

50. Accordingly, Defendants are liable to Plaintiffs for the principal retained and the profits lost or unrealized, in an amount to be determined at trial.

**COUNT II**

*Securities Fraud Under the Idaho Uniform Securities Act*

51. Plaintiffs incorporate by reference each of the allegations set forth above as though fully set forth herein.

52. In connection with the offer and sale of securities, Defendants employed devices, schemes, and artifices to defraud; made untrue statements of material fact and omitted material facts necessary to make their statements not misleading; engaged in acts, practices, and courses of business that operated as a fraud or deceit upon Plaintiffs; and diverted Plaintiffs' funds to the personal use of Defendants, in violation of Idaho Code § 30-14-501.

53. Defendants sold securities to Plaintiffs by means of the untrue statements and omissions of material fact described above, and Plaintiffs did not know of the untruths or omissions. Defendants are therefore liable to Plaintiffs under Idaho Code § 30-14-509(b).

54. Accordingly, Defendants are liable to Plaintiffs for the principal retained and the profits lost or unrealized, in an amount to be determined at trial, plus interest, costs, and attorneys' fees.

**COUNT III**

*Unregistered Broker-Dealer*

55. Plaintiffs incorporate by reference each of the allegations set forth above as though fully set forth herein.

56. Defendants transacted business as broker-dealers or agents by effecting transactions in securities for and with Plaintiffs and others without being registered, in violation of Idaho Code § 30-14-401(a) and 15 U.S.C. § 78o(a)(1).

57. Because Defendants sold securities to Plaintiffs while acting as unregistered broker-dealers or agents, Defendants are liable to Plaintiffs under Idaho Code § 30-14-509(d).

58. Accordingly, Defendants are liable to Plaintiffs for the principal retained, in an amount to be determined at trial, plus interest, costs, and attorneys' fees.

**COUNT IV**

*Unregistered and Fraudulent Investment Advice*

59. Plaintiffs incorporate by reference each of the allegations set forth above as though fully set forth herein.

60. Defendants transacted business as investment advisers by advising Plaintiffs, for compensation, as to the advisability of investing in the pooled carbon-credit program, without being registered, in violation of Idaho Code § 30-14-403(a) and thereby are liable to Plaintiffs under Idaho Code § 30-14-509(e).

61. In providing investment advice, Defendants employed devices, schemes, and artifices to defraud and engaged in acts, practices, and courses of business that operated as a fraud or deceit upon Plaintiffs and diverted Plaintiffs' funds to the personal use of Defendants, in violation of Idaho Code § 30-14-502, and are liable to Plaintiffs under Idaho Code § 30-14-509(f).

62. Accordingly, Defendants are liable to Plaintiffs for the principal retained, in an amount to be determined at trial, plus interest, costs, and attorneys' fees.

**COUNT V**
*Fraud*

63. Plaintiffs incorporate by reference each of the allegations set forth above as though fully set forth herein.

64. Defendants made material misrepresentations of fact to Plaintiffs, including that Plaintiffs' funds would be pooled and used to trade carbon credits, that the program consistently generated returns of up to 1% per international banking day (or approximately 20% per month), and that Plaintiffs' principal and returns would be available for withdrawal.

65. Plaintiffs' funds were not pooled and used to trade carbon credits on SecDex, Plaintiffs' funds did not provide the returns Defendants promised or showed Plaintiffs, Plaintiffs access to their funds, including returns, is not as Defendants had represented.

66. Defendants knew these representations were false or made them with reckless disregard for their truth, and, upon information and belief, made promises regarding the investment and use of funds with no intention of performing in order to induce Plaintiffs to invest.

67. Defendants made the misrepresentations intending that Plaintiffs rely on them.

68. Plaintiffs were ignorant of their falsity, justifiably relied on them, and would not have entered into the Investment but for those misrepresentations.

69. Because Plaintiffs were fraudulently induced into entering into the Investment, Plaintiffs have been damaged as a direct and proximate result of Defendants' misrepresentations.

70. Accordingly, Defendants are liable to Plaintiffs for the principal retained and the profits lost or unrealized, in an amount to be determined at trial, plus interest, costs, and attorneys' fees.

**COUNT VI**
*Conversion*

71. Plaintiffs incorporate by reference each of the allegations set forth above as though fully set forth herein.

72. Plaintiffs' funds remain Plaintiffs' property.

73. Defendants wrongfully exercised dominion and control over those funds inconsistent with Plaintiffs' rights, by misapplying the funds, misrepresenting the status of Plaintiffs' funds, and by refusing to return them upon Plaintiffs' demand.

74. Because Defendants wrongfully exercised and continue to exercise dominion and control over Plaintiffs' funds, Plaintiffs have been denied the use and benefit of their funds.

75. Accordingly, Defendants are liable to Plaintiffs for the principal retained and the profits lost or unrealized, in an amount to be determined at trial, plus interest, costs, and attorneys' fees.

**COUNT VII**
*Breach of Contract (Against DTLAP)*

76. Plaintiffs incorporate by reference each of the allegations set forth above as though fully set forth herein.

77. The Carbon Offering Agreement is a valid and enforceable contract governing Plaintiffs' investment through DTLAP.

78. Plaintiffs performed their obligations by tendering their funds.

79. DTLAP breached the Agreement by failing to hold and deploy Plaintiffs' funds as promised, failing to account for the funds, and refusing to return Plaintiffs' principal and returns.

80. As a direct and proximate result of the breach, Plaintiffs suffered damages in an amount to be determined at trial, plus interest and costs.

**COUNT VIII**

*Breach of the Implied Covenant of Good Faith and Fair Dealing (Against DTLAP)*

81. Plaintiffs incorporate by reference each of the allegations set forth above as though fully set forth herein.

82. The Carbon Offering Agreement is a valid and enforceable contract governing Plaintiffs' investment through DTLAP.

83. Plaintiffs performed their obligations by tendering their funds.

84. DTLAP breached the implied covenant of good faith and fair dealing by failing to hold and deploy Plaintiffs' funds as promised, failing to account for the funds, failing to be transparent with the disposition of Plaintiffs' funds, and refusing to return Plaintiffs' principal and returns.

**COUNT IX**

*Unjust Enrichment*

85. Plaintiffs incorporate by reference each of the allegations set forth above as though fully set forth herein.

86. Plaintiffs conferred a benefit on Defendants by transferring their funds to Defendants.

87. Defendants appreciated and retained that benefit without providing the promised investment or services and without returning the funds. Under the circumstances, it would be inequitable for Defendants to retain the benefit without payment of its value.

88. Plaintiffs are entitled to restitution of the value of the benefit conferred, in an amount to be determined at trial, plus interest and costs.

**COUNT X**

*Violation of the Idaho Consumer Protection Act*

89. Plaintiffs incorporate by reference each of the allegations set forth above as though fully set forth herein.

90. In the conduct of trade or commerce, Defendants engaged in unfair and deceptive acts and practices, including misrepresenting the nature, performance, and use of the Investment and Plaintiffs' funds, and engaging in conduct otherwise misleading, false, or deceptive to Plaintiffs, in violation of Idaho Code § 48-603.

91. Plaintiffs suffered ascertainable loss of money as a result of Defendants' unlawful acts and practices because Plaintiffs choose to enter the Investment and have been denied their principal and returns because of Defendants' wrongful conduct.

92. Accordingly, Plaintiffs are entitled to recover actual damages or statutory damages, together with such equitable relief, costs, attorneys' fees, and punitive damages as the Court deems proper, under Idaho Code § 48-608.

**PRAYER FOR RELIEF**

Plaintiffs respectfully pray that the Court enter judgment against Defendants and award the following relief:

1. Compensatory damages in an amount to be proven at trial against Defendants for, including but not limited to Plaintiffs' principal and the investment returns promised and represented to Plaintiffs;

2. Rescission and recovery of the consideration Plaintiffs paid, together with interest, upon tender, as provided by the Idaho Uniform Securities Act;

3. An order for an accounting of Plaintiffs' funds and disgorgement of all amounts Defendants wrongfully obtained or retained, and imposing a constructive trust over funds traceable to Plaintiffs' investments;

4. Punitive and exemplary damages as permitted by law punitive and exemplary damages as permitted by law;

5. Prejudgment and post-judgment interest, costs, and reasonable attorneys' fees as permitted by law;

6. Such other relief as the Court deems just and proper.

DATED October 1, 2026.

By */s/ C. Edward Cather*
C. Edward Cather
Braxton J. Ard
Attorneys for Plaintiffs